UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE MICHELLE McCREA,

      Plaintiff,

v.                                        Case No. 1:18-cv-1327

                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**OPINION**

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

      Plaintiff alleged a disability onset date of December 9, 2010. PageID.44. However, she did not file an application for benefits until March 29, 2017. PageID.44. Plaintiff identified her disabling conditions as post-traumatic stress disorder (PTSD), borderline personality disorder, anxiety, panic, depression, addiction, endometriosis, osteoarthritis in both knees, and heart disease. PageID.311. Prior to applying for DIB and SSI, plaintiff completed two years of college and had worked as a cashier, cosmetic manager/retail, store manager, clerk in accounts/receivables, dispatch towing, and internal auditor. PageID.61. An Administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on May 25, 2018. PageID.44-63. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 9, 2010, and that she met the insured status of the Social Security Act through December 31, 2015. PageID.46. At the second step the ALJ found that plaintiff had severe impairments of: major depressive disorder; PTSD; anxiety disorder/GAD; borderline personality disorder; left knee degenerative osteoarthritis; history of endometriosis s/p hysterectomy; mild T-spine scoliosis and mild changes of lumbar spine; obesity; asthma; and, history of polysubstance abuse in apparent Remission. PageID.46. At the third step the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.48.

The ALJ found at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); specifically; lift and/or carry 10 pounds frequently and 20 occasionally; stand/walk 6 hours and sit 6 hours in an 8-hour workday; occasional ramps and stairs; no ladders, ropes, scaffolds; frequently balance; occasionally stoop and crouch; no kneel or and crawl; no operation of leg or foot controls bilaterally; occasional exposure to fumes, odors, dusts, gases and areas of poor ventilation; no exposure to extremes of cold; only occasional exposure to humidity and wetness; limited to performing simple, routine work that involves making simple, work-related decisions and tolerating occasional workplace changes; no contact with the general public; only occasional contact with coworkers and supervisors.

PageID.51. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.61.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.61-62. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work such as

4

assembler (125,000 jobs), inspector (135,000 jobs), and bench assembly (150,000 jobs). PageID.62. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 9, 2010 (the alleged onset date) through May 25, 2018 (the date of the decision). PageID.62-63.

### III. DISCUSSION

Plaintiff set forth one issue on appeal (with four sub-issues):

> **The ALJ's residual functional capacity finding is not supported by substantial evidence under 20 C.F.R. § 404.1520a and applicable case law.**

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Plaintiff's appeal is focused on her mental impairments and carpal tunnel syndrome. *See* Plaintiff's Amended Brief (ECF No 13, PageID.1604).

> **A. The ALJ's finding that the opinions of Jennifer Richardson, PA-C were "unsupported" is not supported by substantial evidence, and had the ALJ properly assessed her opinions, she would have met a Listing.**

Plaintiff's claim arises from the opinions of treating physician's assistant Jennifer Richardson, PA-C. Specifically, Ms. Richardson's Mental RFC assessment (PageID.1438-1440) (Exh. 28F) and her narrative statement (PageID.1441-1444) (Exh. 29F), both of which were completed in March 2018. The ALJ found Ms. Richardson's opinions "unsupported" when he determined plaintiff's RFC.

5

The ALJ's decision states that he "considered the medical opinion(s) . . . in accordance with the requirements of 20 CFR 404.1520c and 416.920c." PageID.51. Plaintiff contends, among other things, that "[t]he ALJ did not properly address the criteria required by 20 C.F.R. § 404.1520c in his Decision" and that "[a]t a minimum, the ALJ violated 40 C.F.R. §§404.1520c and 404.1520(b) by rejecting Ms. Richardson's opinions wholesale." PageID.1621.

The regulations at 20 C.F.R. §§ 404.1520c(b) and 416.920c(b), state that, "[w]e will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." With respect to "source-level articulation," the regulations provide as follows:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. §§ 20 CFR 404.1520c(b)(1) and 416.920c(b)(1).

The most important factors to be considered by the ALJ are "supportability" and "consistency":

> The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

6

20 C.F.R. §§ 20 CFR 404.1520c(b)(2) and 416.920c(b)(2).

The regulations define the factors of "supportability" and "consistency" as follows:

(1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2).

Here, plaintiff filed her claims for DIB and SSI on March 29, 2017. PageID.44. The ALJ noted that plaintiff alleged "a remote onset date of December 2010" and "the expired date last insured of 12/2015." PageID.52. The ALJ's decision, entered on May 25, 2018, evaluated over 8 years during which plaintiff was allegedly disabled. Not surprisingly, his review of the evidence with respect to plaintiff's RFC included more than 40 paragraphs. PageID.51-61.

Plaintiff had a number of medical providers between December 9, 2010 and May 25, 2018, including Ms. Richardson. The ALJ evaluated her opinions in pertinent part as follows:

Jennifer Richardson, PA-C, began seeing the claimant during 2017. On 12/21/2017, she submitted a statement updating the diagnoses of major depression, PTSD, and panic disorder. The claimant reportedly lacked the ability to understand her appeal rights or lacked the capacity to even act on her own behalf to file an application for disability or an appeal (ex. 18F). Ms. Richardson completed statements at 28F and 29F. These indicate that the claimant has mental health impairments that would be work preclusive if adopted, or if they were supported. Ms. Richardson did not begin meeting with the claimant until the end of 2015 so it is not apparent what the scope of these limitations would be. Presumably this is supposed to represent an estimate of how the claimant functioned during the entire period at issue and not just the few occasions that the claimant met with Ms. Richardson.

The sworn statement at 29F contains more details and some explanation for the functional estimates. Ms. Richardson reviewed the computer records from the

> CMH center and noted the diagnoses of depression, PTSD, bipolar and borderline personality disorder (ex. 29F). She also has anxiety and feels overwhelmed if she encounters too much stress. Ms. Richardson estimates that the claimant would have severe deficits in maintaining regular attendance and in meeting competitive standards. That would include missing 4 or more days of work per month.
>
> In support of this, Ms. Richardson indicates that the claimant is quite emotionally dysregulated at times. She is unable to organize where she is supposed to be or what she is doing. She also has limitations in understanding and comprehension (ex. 29F, p. 2). If the opinions in exhibit 28F and 29F were supported, this case would meet one of more listings. That is not the case, however.
>
> \*   \*   \*
>
> The claimant's representative submitted a brief in which he asserts that the current opinion from Jennifer Richardson, PA-C, at exhibit 28F and 29F must be adopted. Atty. Morse also asserts that since the conclusions or [sic] Ms. Richardson are work preclusive; they must be adopted as they are consistent with the medical evidence of record (ex. 22E). The undersigned does not concur with this theory. Again, the opinions of Ms. Richardson are not in accordance with many of the treatment records or progress notes.

PageID.52, 54.

The ALJ's review of the record included plaintiff's appointments with Ms. Richardson commencing on October 19, 2015. PageID.59-60. The ALJ's review included the following evaluations which compared Ms. Richardson's opinions with plaintiff's symptoms:

> The claimant met with Ms. Richardson again 11/30/2015 (ex. 23f). She had another mental status check. Appearance is neat and clean. Her hair looks freshly shampooed. Eye contact is good. Behavior is cooperative. Speech is regular rate and rhythm. Thought content is appropriate overall. Thought process is logical and coherent. She seems to have good insight into her need for treatment. She is oriented to person, time, place and situation. Mood is euthymic. Affect is broad (ex. 23f, p. 67). <u>The undersigned notes that these progress reports are markedly different, showing fewer adverse symptoms or restrictions, when compared to the sworn statement and RFC form Ms. Richardson completed at exhibits 28F and 29F</u>.

PageID.59 (emphasis added).

> On 9/27/2016 the claimant had another regular appointment and medication review with Ms. Richardson. <u>Contrary to what is said in the functional summary and sworn statement, the claimant was again doing well per this 9/27/16 progress note (ex. 23F, p. 31).</u> Subjectively the claimant stated things were going well. Julie

8

> presents today for a medication review. She reports that overall things have been going well. She states that she is getting out. She was exercising more and seems to be more active with her daughter. The claimant was showing that she seems to be able to maintain overall current medications and mood. No other concerns mentioned. She denies any current suicidal or homicidal ideation or self-injurious behavior. She will continue current medications. The mental status examination revealed objective findings of the appearance is neat and clean. She visibly has lost weight over 20 pounds in the last 6 months. She is oriented to person, time, place, and situation. Mood is euthymic. Affect is broad (ex. 23F, p. 30 to 32).

PageID.60 (emphasis added).

> On 11/21/2016, she was again doing well subjectively and objectively (ex. 23F, p. 26). She was still getting outside, exercising and being more active with her daughter. During the early portion of 2017, she had some difficulty interacting with her mother in the residence (ex. 23F, pp. 17 to 23). However, as of 3/20/2017, the claimant said that she was stable. She also noted that she met a new adult, male, and she had been dating for a few weeks (ex. 23F, p. 18). She was excited about this new experience. She felt that her medications were helpful with the depression and anxiety. She was described as neat, clean, oriented in all spheres, and her mood was euthymic and her affect broad (ex. 23F, p. 18). <u>This is again very different from the estimate of her functional capacity within the sworn statement at exhibit 29F. The sworn statement mentions that she is unable to "follow through with meeting times and also mood dysregulation, (including) being fearful in even leaving her house due to anxiety and stress." (ex. 29F, p. 3). These statements are presented as being factual, and they are clearly unsupported when compared to Ms. Richardson's own treatment notes at exhibit 23F</u>.

PageID.60 (emphasis added).

The ALJ concluded the RFC evaluation as follows:

> While medication review notes indicate some variability as far as her moods and symptoms, and despite the claimant's contention that treatment has not been effective, it is evident that the claimant has benefitted from consistent medication and therapy. Additionally, the treatment notes clearly show that she has the ability to perform simple unskilled work within in the parameters of the aforementioned residual functional capacity assessment. This case covers a period of 2010 to the present [May 25, 2018] and the claimant has received treatment from many mental health and physical health providers. The RFC here accommodates for her pain and the underlying mental health restrictions.

> In summary, the above residual functional capacity assessment is consistent with and supported by the records obtained from the claimant's treating sources and the claimant's own statements regarding her and abilities. Her testimony and

9

> allegations from the hearing, and those made when seeking the disability benefits, are not well supported either now, or for the period prior to the date last insured.

PageID.61.

Plaintiff's brief raises three objections to the ALJ's decision. First, plaintiff points out that Ms. Richardson met with plaintiff 14 or 15 times for about two years before giving her opinions. Plaintiff's Brief (ECF No. 13, PageID.1619). While plaintiff objects to the ALJ's reference to these contacts as "a few occasions" (PageID.52), the Court does not find this to be a mischaracterization requiring reversal. Plaintiff sought treatment from Ms. Richardson during about two of the eight years reviewed by the ALJ. The ALJ's reference to plaintiff meeting with Ms. Richardson a "few times" was not unreasonable, given that the period under consideration was eight years. In addition, the ALJ did not discount Ms. Richardson's opinions based upon her lack of contact with plaintiff; rather the ALJ pointed out inconsistencies when comparing Ms. Richardson's opinions with her treatment records.

Second, plaintiff contends that, "[c]ontrary to the ALJ's findings, Dr. Duranceau found plaintiff's psychological conditions limited her functioning." PageID.1619-1620. This claim is not one of the identified errors. Accordingly, this argument is waived.[1]

Third, plaintiff contends that "Ms. Richardson's findings are consistent with the evidence as a whole, contrary to the ALJ's findings." PageID.1620-1621. In this regard, plaintiff contends that "ALJ admitted that Ms. McCrea's symptoms fluctuated, but his RFC reflects only periods during which her functioning improved; contrary to the ALJ's finding, even after

---

[1] The Notice Regarding Consent and Directing Filing of Briefs states in pertinent part, "The initial brief shall not exceed 20 pages and must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue." Notice (ECF No. 8, PageID.1541).

medication and therapy, she continued to have significant periods of limited functioning." PageID.1620.

The ALJ discounted Ms. Richardson's opinions primarily because they were inconsistent with her own treatment notes. Plaintiff points out that her condition fluctuated while being treated by Ms. Richardson. Given that plaintiff's claim extended over a period of 8 years, it would be surprising if her mental condition did not fluctuate over that period of time. The ALJ acknowledged this fluctuation, noting that "medication review notes indicate some variability as far as her moods and symptoms" and that "[t]his case covers a period of 2010 to the present and the claimant has received treatment from many mental health and physical health providers." PageID.61. After an exhaustive review of plaintiff's medical records over that time period, the ALJ found that plaintiff had a considerable number of impairments which limited her functioning and affected her ability to work. The ALJ recognized these impairments in the RFC by limiting her to "performing simple, routine work that involves making simple, work-related decisions and tolerating occasional workplace changes; no contact with the general public; only occasional contact with coworkers and supervisors." PageID.51. The vocational expert (VE) testified that a hypothetical person with these limitations could still perform unskilled work such as assembler, inspector, and bench assembler. PageID.62, 133.

For all of these reasons, the Court concludes that the ALJ's review of Ms. Richardson's opinions was appropriate under the framework of §§ 404.1520c and 416.920c. Accordingly, plaintiff's claim of error is denied.

> **B. The ALJ did not properly weigh the evidence because he focused on the time period prior to December 31, 2015 (plaintiff's date last insured), when Ms. McCrea also had a pending claim for supplemental security income (SSI).**

Plaintiff contends, without elaboration, that "[a]s set forth below, the ALJ appears to have focused on the pre-2015 evidence when he gave Ms. Richardson's opinion little weight." PageID.1616. Plaintiff did not develop an argument to support this claim. Accordingly, plaintiff's claim is denied as inadequately briefed. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (issues adverted to in a perfunctory manner are deemed waived).

> **C. The ALJ did not properly weigh the evidence because he focused on the evidence that supported his RFC finding, even though the plaintiff's condition fluctuated and the RFC finding is an analysis of the most plaintiff can do.**

Plaintiff did not raise a separate argument with respect to this claim, but discussed her fluctuating symptoms with respect to Ms. Richardson's opinions. The Court addressed plaintiff's discussion in § III.A., *supra*.

> **D. The ALJ failed to include the effects of all Ms. McCrea's impairments in his RFC findings or in his hypothetical to the vocational expert (VE).**

While plaintiff frames this issue as one involving a defective RFC determination or a defective hypothetical question, her actual argument is that, "[i]n this case, the ALJ did not consider Ms. McCrea's bilateral carpel tunnel syndrome a severe impairment or include any handling, reaching or fingering limitations in her RFC." PageID.1622. As discussed, the ALJ identified 10 severe impairments: major depressive disorder; PTSD; anxiety disorder/GAD; borderline personality disorder; left knee degenerative osteoarthritis; history of endometriosis s/p hysterectomy; mild T-spine scoliosis and mild changes of lumbar spine; obesity; asthma; and, history of polysubstance abuse in apparent Remission. PageID.46.

However, the ALJ found that plaintiff's carpal tunnel syndrome was a non-severe impairment which was treated in 2012:

12

> The history of carpal tunnel syndrome is non-severe. She had an EMG 4/9/2012 and that revealed mild demyelination and sensory median mononeuropathy at the wrists bilaterally. She had a left CTS release procedure 6/29/12 and as of 7/17/2012 the pain symptoms had dramatically improved per her subjective statements. She had the right CTS release 10/12/2012 and as of 12/5/2012 she was able to flex and extend the fingers full and make a fist. She had full range of motion and the pain decreased. She met with the orthopedic office 1/21/2013, and both hands were still improving. The improvement of the CTS is shown at exhibits 6F, 8F and 17F. During the hearing, she testified that her hands are still weak. The tingling or neuropathy symptoms are gone. The claimant did allege that she still has some weakness in the hands and some pain. This is deemed non-severe. While she had CTS in 2012, the condition improved rapidly with surgery and is no longer severe.

PageID.47.

Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

The issue before the Court is whether the ALJ appropriately addressed this non-severe impairment in developing plaintiff's RFC. In finding that this was a non-severe impairment, the ALJ addressed the fact that plaintiff's carpal tunnel syndrome was diagnosed, treated, and resolved within less than one year. At the hearing, plaintiff's complaint was that she still had weakness in her hands and pain. In this regard, the ALJ noted that plaintiff's primary care physician, Jesse Duranceau, D.O., opined that "other than deconditioning she has no ostensible

physical limitations to working." PageID.56, 1529.² The ALJ concluded by stating that, "[t]he undersigned finds that quite well supported, as many of the long-term issues such as endometriosis, the carpal tunnel, asthma, GERD, and chronic pain were not severe after they responded to treatment." PageID.56.

The record reflects that the ALJ considered plaintiff's carpal tunnel syndrome in determining her RFC. The fact that the ALJ did not find the carpal tunnel syndrome to be a severe at step two is legally irrelevant. *Anthony*, 266 Fed. Appx. at 457. Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 30, 2020 /s/ Ray Kent
United States Magistrate Judge

---

² The doctor's treatment notes from August 7, 2017 state in pertinent part, "Also discussed the paperwork she dropped off for disability asked many questions about her physical capacities and I explained that other than deconditioning she has no ostensible physical limitations to working. Modest joint and lumbar pain without any apparent lack of ROM. She states she is aware that it is primaarily [sic] her psychiatric DX that limits her." PageID.1529.